<div align="right">NEW-YORK,<br>May, 1819.<br><br>EDWARDS<br>v.<br>DAVIS.</div>

<div align="center">Order of Sessions reversed.</div>

<div align="center">━━━━◯✳◯━━━━</div>

<div align="center">EDWARDS and Wife *against* DAVIS.</div>

IN ERROR, to the Court of Common Pleas of the county of *Jefferson.*

The defendant in error brought an action of *indebitatus assumpsit*, in the Court below, against the plaintiffs in error. The declaration alleged, that *Hannah*, the wife of the defendant *Edwards*, when sole and unmarried, was indebted to the plaintiff below, in the sum of 300 dollars, for meat, drink, washing, lodging, and other necessaries, by the plaintiff found and furnished, at her special instance and request, whilst sole and unmarried, for *Samuel* and *Ruth Clark*, her parents ; and in the further sum of 300 dollars, paid, laid out, and expended, at her special instance and request, and for her, in furtherance of their good and comfortable maintenance and support, and in discharge of surgeons and physicians' bills for attendance on them; and being so indebted, whilst she was sole and unmarried, she undertook, &c. There was another similar count, for necessaries furnished to, and money paid for, the maintenance of *Samuel* and *Ruth Clark*, at the requests of both the defendants, *Edwards* and

<div align="right" style="font-size:smaller">There is no common law obligation, by which a child is liable to support an infirm and indigent parent, but the liability of the child is created solely by statute: and, therefore, the law does not imply a promise from the child, to pay for necessaries furnished, without his request, to an indigent parent, and the natural obligation can only be enforced in the mode pointed out by the *act for the relief and settlement of the poor.* Sess. 36. c. 78. s. 21. (1 *N. R. L.* 286.)<br>A declaration in an action of</div>

*assumpsit* against husband and wife, alleging a request and promise by husband and wife, during coverture, is bad, for the wife cannot be sued upon a mere personal contract made during coverture, although joined with her husband : and if a count on a promise by husband and wife, be joined with a count on a promise by the wife *dum sola*, and judgment is rendered generally for the plaintiff, it is error.

NEW-YORK, his wife, in which the promise was alleged to have been made
May, 1819. by them both. The defendants pleaded *non assumpserunt.*

EDWARDS
v.
DAVIS.

    The cause was referred, under the statute, by rule of
Court, and the referees made the following report: " The
referees appointed in this cause report, that they find due to
the plaintiff from the defendants, the sum of 49 dollars and
51 cents. The facts were substantially these : that *Davis's*
and *Edwards's* wives are sisters, whose parents have eight
children. *Edwards's* wife was, before the marriage with
*Edwards,* a widow. Her parents were poor and feeble, and
unable to maintain themselves. The plaintiff had, during
the widowhood of Mrs. *Edwards,* expended the sum of 396
dollars and 8 cents, the one eighth part of which is the above
sum reported. It appeared that Mrs. *Edwards,* while a
widow, had sufficient property to have paid said sum re-
ported. The plaintiff also claimed before us, the one eighth
part of 348 dollars and 48 cents, being the sum that appear-
ed in evidence to us, which he had expended in support of
the aforesaid parents of *Edwards's* wife, since she was mar-
ried to *Edwards,* and before the commencement of this suit ;
but this last demand we did not allow : but refer the same
to the Court, whether, according to law, it ought to be
allowed."

    The Court confirmed the report as to the first sum found
by the referees, but disallowed the other, and a judgment
was thereupon rendered, for the plaintiff below, for 49 dol-
lars and 51 cents.

    *Loucks,* for the plaintiffs in error. By the marriage, the
obligation of *Hannah,* the wife of *Edwards,* to maintain her
parents, entirely ceased, she having taken upon herself
stronger and paramount duties. A man who marries a
widow, having children by a former husband, is not bound
to maintain those children. (*Cooper* v. *Martin,* 4 *East,* 76.
84.) *Lawrence,* J. said it was a mistake, to consider the
maintenance of the children as the *debt* of the mother, who
has married a second husband, or as a *debt* on her estate.
The wants of the children are only ground for an order of
maintenance, under the statute, if the parent is of sufficient
ability ; but when she has parted with that ability by a se-

cond marriage, she is no longer liable. (*Tubb* v. *Harrison,*
4 *Term Rep.* 118. *S. P.*)

So, in *Rex* v. *Munden,* (1 *Str.* 190.) it was decided, that
a man was not bound to maintain his wife's mother, though
he received a good fortune with his wife. *Pratt,* Ch. J.
said, that by the law of nature, a man was bound to take
care of his own father and mother; but there being no tem-
poral obligation to enforce that law of nature, it was neces-
sary to establish it by act of parliament, which extended no
farther than the law of nature went before. This case
was recognized in *The King* v. *Benoier,* (2 Lord *Raym.*
1454.)

There is no contract in this case; but the plaintiff's claim
is founded on the liability of the defendant's wife, arising
from natural relationship, which, we contend, ceased on her
marriage. But if liable at all, she could only be so, under
the statute *for the relief and settlement of the poor.* (1 *N.
R. L.* 286. sess. 36. ch. 78. s. 21.) The only remedy being
by statute, no action lies at common law. (5 *Johns. Rep.*
175. 10 *Johns. Rep.* 389.) The party, therefore, should
have applied to the *Sessions* for an order of maintenance.

*N. Williams,* contra. The plaintiff below was clearly en-
titled to recover against the defendants the amount for which
the wife of *E.* was liable. Now, the wife was under a natu-
ral and moral obligation of the highest kind, to support her
indigent parents; (1 *Bl. Com.* 453.) and the Court may pre-
sume a promise founded on such moral obligation.(*a*) This

(*a*) It never has been decided, that a mere moral obligation is sufficient
to raise an implied assumpsit. Our law does not go the length of the
civil law in enforcing a naked promise, or mere moral obligation.
(*Thorne* v. *Deas,* 4 *Johns. Rep.* 97. 1 *Fonbl. Equ.* 322—326.) Where
*assumpsit* is brought on a past or executed consideration, and laid, as it
must be, on the *request* of the defendant, (1 *Chitty's Pl.* 296, 297.) that
*request* may be shown either by positive proof, or *implied evidence,*
arising from the *beneficial* nature of the consideration, and the circum-
stances of the transaction. (*Livingston* v. *Rogers,* 1 *Caines' Rep.* 584,
585. 1 *Saund.* 264. n. 1. *Hicks* v. *Buchans,* 10 *Johns. Rep.* 243.) But
*it seems,* that a legal or equitable duty, or a prior moral obligation, is a
sufficient consideration to support an *express* promise. (*Buller's N. P.*

NEW-YORK, is the principle of the common law; and though the statute
May, 1819. gives a remedy, it is in the affirmative, and does not take
EDWARDS   away the common law right.   (1 *Comyn's Dig.* 322.   *Ac-*
v.        *tion on Statute,* (*C.*)   2 *Inst.* 100.)
DAVIS.

Again; the report of the referees may be considered
as a special verdict; the Court may, therefore, presume
that it was proved, that the necessaries were furnished to
the parents, at the special instance and request of the de-
fendants.   (1 *Saund.* 228. *a.*   *Bartlett* v. *Crozier,* 15 *Johns.*
*Rep.* 254.)

SPENCER, Ch. J. delivered the opinion of the Court.
On the argument these questions were discussed ; whether,
independently of statutory provisions, at common law, a
child, having sufficient property, was liable, merely from that
relation, to support her parents ; and whether a suit could

147. *Watson* v. *Turner.*   *Hawkes* v. *Saunders, Cowp.* 290.   *Atkins* v.
*Banwell,* 2 *East,* 506.   *Sed vide* 3 *Bos. & Pull.* 249, 250. *Wennall* v.
*Adney,* a learned and well written *note* of the reporters, who think the
position too broad and indefinite.)   From what is said by the Court in
*Comstock* v. *Smith,* (7 *Johns. Rep.* 88.) it might be inferred, that a bene-
ficial consideration, or a request, might be implied from the moral obli-
gation alone, but the cases there referred to, do not support that doc-
trine ; nor was such a principle necessary to the decision in that case.
Though it has been, undoubtedly, decided, that "where a person is
bound, morally and conscientiously, to pay a *debt,* though not *legally*
bound, a subsequent promise to pay will give a right of action;" (*Lee* v.
*Muggeridge,* 5 *Taunt.* 36. 44.) or as *Gibbs,* J. expresses himself, that
" wherever there is a moral obligation to pay a debt, or perform a duty,
a promise to perform that duty, or pay that debt, will be supported by the
previous moral obligation;" yet, it is believed, that in all the cases
which may be cited in support of the rule, there was an original con-
sideration, beneficial to the party promising, and which might have been
enforced, on an implied promise, had it not been for some statute pro-
vision, or some positive rule of law, which, with a view to the general
good, exempted the party from *legal* liability, in the particular instance.
(Vide further *Dunbar* v. *Williams,* 10 *Johns. Rep.* 249. *Newby* v. *Wilt-*
*shire,* 2 *Esp. N. P. Rep.* 739. *Simmons* v. *Wilmot,* 3 *Esp. N. P. Rep.*
91. *Tioga* v. *Seneca,* 13 *Johns. Rep.* 380. *Everts* v. *Adams,* 12 *Johns.*
*Rep.* 352. *Oatfield* v. *Waring,* 14 *Johns. Rep.* 188. *King* v. *Butler,* 15
*Johns. Rep.* 281.   *Barnes* v. *Hedley,* 2 *Taunt.* 174. *Lamb* v. *Bunce,* 4
*Maule & Selw. Rep.* 275. *Wing* v. *Mill,* 1 *Barnw. & Ald. Rep.* 104.)

be maintained by any person, furnishing a necessary support <span>NEW-YORK, May, 1819.</span>
to the parents, against such child?

The duty of a parent to maintain his offspring, until they <span>EDWARDS v. DAVIS.</span>
attain the age of maturity is a perfect common law duty. The
liability of a child to support its parents, who are infirm, des-
titute, or aged, is wholly created by statute; and it has been
truly said, that the statute imposes on such relatives, duties
unknown to the common law. (*Reaves' Domestic Relations*,
284. 1 *Bl. Com.* 448.) In *Rex* v. *Munden*, (1 *Str.* 190.)
*Pratt*, Ch. Justice, said, with the concurrence of the Court,
" by the law of nature, a man was bound to take care of his
own father and mother, but there being no temporal obliga-
tion to enforce that law of nature, it was found necessary to
establish it by act of parliament." Our statute for the re-
lief and settlement of the poor, (1 *N. R. L.* 286. s. 21.)
provides, that the father and grandfather, mother and grand-
mother, being of sufficient ability, of any poor, blind, lame,
or decrepid person, not being able to maintain himself, and
becoming chargeable to any city or town, and the children and
grandchildren being of sufficient ability of such poor, blind,
lame, or decrepit person, not being able to maintain himself,
and becoming chargeable, as aforesaid, shall respectively,
at their own charge and expense, relieve and maintain every
such poor person, in such manner as the justices of the
peace of the county, at their general sessions of the peace,
shall order and direct, on pain of forfeiting and paying one
dollar and twenty-five cents for each person so ordered to
be relieved, for every week such order shall not be obeyed,
to be sued for by the overseers of the poor of the city or
town to which such poor person shall be chargeable.

Now, the duty of a child, of sufficient ability to maintain
its poor and destitute parents, being an imperfect one, not
enforced at the common law, and the statute having pre-
scribed the manner in which it is to be enforced, and the
extent of the penalty, the statute remedy is the only one to
be resorted to. This principle was recognized by this Court
in *Almy* v. *Harris*, (5 *Johns. Rep.* 175.) Then, the conse-
quence necessarily follows, that no one who has afforded re-
lief to indigent persons, from motives of humanity, or from
any other consideration, can maintain a suit, as upon an im-

NEW-YORK, plied contract, against the children of such parents, arising
May, 1819. merely from the duty which such child owes to its parents,
EDWARDS to support them.
v.
DAVIS.      It was urged on the argument, that the Court would in-
tend a request, from the moral duty operating on the child;
it is true, that a request has been inferred, as in the case of
*Oatfield* v. *Waring*, (14 *Johns. Rep.* 192.) from the bene-
ficial nature of the transaction, and the circumstances of the
case.  In the present case, the maintaining the parents of
the wife of the plaintiff in error, while she was sole, could
not be considered a benefit to her; and the circumstances
negative the idea that any request was made by her, or the
defendant in error, to maintain and support her parents.

We must regard the special report of the referees as pre-
senting the facts in the case, and then it is evident, that
they place their decision on the ground, that the plaintiff
below had expended a gross sum in supporting the parents
of the wives of the plaintiff and defendant; that the defen-
dant's wife was of sufficient ability; that there were eight
children, and the whole expenditure is apportioned on the
eight children.  The referees evidently founded their re-
port on these circumstances alone; and unless we regard
their report as in the nature of a special verdict, and consi-
der the judgment rendered thereon, which is a general one,
as adopting and sanctioning the special finding of the re-
ferees, and as applicable to the demand for necessaries found
for the parents of the plaintiff's wife, whilst she was sole,
the judgment is erroneous on another ground.  Some of the
counts are against the plaintiff and his wife, for necessaries
furnished the parents of the wife, at the special instance
and request of the husband and wife; and no principle is
better settled, than that the wife can, in no case, be sued
upon a mere personal contract made during the coverture,
whether joined with her husband or not, unless the husband
be *civiliter mortuus*, or banished or transported. (1 *Chit. Pl.*
43.  2 *Saund.* 180. n. 9.)

                                 Judgment reversed.